**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LUVONDA GOAD, wife;
GREGORY A. GOAD, husband,

Plaintiffs-Appellants,

v.

THE BUSCHMAN COMPANY,
an Ohio corporation, a/k/a FKI
Logistex Automation, Inc.;
FKI LOGISTEX AUTOMATION,
INC., an Ohio corporation,

Defendants-Appellees.

No. 08-5065
(D.C. No. 4:06-CV-00341-GKF-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **McKAY**, and **GORSUCH**, Circuit Judges.

The issue in this products-liability case is whether or not a large conveyor

system installed in a grocery-distribution center is an "improvement to real

property" within the meaning of Oklahoma's ten-year statute of repose, Okla.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Stat. Ann. tit. 12, § 109. As relevant here, the statute serves to bar tort actions against parties who performed or furnished "the design, planning, supervision or observation of construction, or construction of an improvement to real property" if more than ten years have elapsed from the time the improvement was substantially completed. *See id.*[1] The district court granted defendants' motion for summary judgment, concluding that the statute barred plaintiffs' claims because the conveyor system was an improvement to real property that was substantially completed more than ten years before the claims arose. Plaintiffs have appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm for substantially the same reasons set forth in the district court's decision.

---

[1] The statute provides in full:

No action in tort to recover damages

> (i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
>
> (ii) for injury to property, real or personal, arising out of any such deficiency, or
>
> (iii) for injury to the person or for wrongful death arising out of any such deficiency,

shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

Okla. Stat. Ann. tit. 12, § 109.

# I

The material facts are undisputed.[2]  Plaintiff LuVonda Goad worked as a stocker at a grocery-distribution center in Ponca City, Oklahoma, owned by Albertsons.  The distribution center is equipped with a conveyor system manufactured and installed in 1985 by defendants The Buschman Company and FKI Logistex Automation, Inc. (Buschman or defendants).[3]  The purpose of the conveyor is to move materials within the distribution center.  On November 14, 2000, Mrs. Goad sustained serious and permanent injuries when her left hand and arm were pulled into the conveyor.  She filed this diversity action in 2006, asserting claims of strict liability and negligence/gross negligence based on defective design, construction, or installation of the conveyor system.  Her husband, Gregory Goad, also brought a claim for loss of consortium.

Defendants filed a motion for summary judgment based on the statute of repose.  In response, plaintiffs argued that the statute of repose was not applicable because the conveyor system was not an improvement to real property.

The evidence presented to the district court shows that in 1985, Buschman contracted with American Stores Properties (ASP) for the design, construction, and installation of the conveyor system.  The sales agreement defines "Equipment" as "all the equipment, machinery, parts and other items *intended to*

---

[2]    As discussed below, we reject plaintiffs' contrary contention.

[3]    FKI is apparently a successor entity to Buschman.

*be installed permanently* at the Worksite." Aplt. App. at 42 (emphasis added). Buschman designed the system according to ASP's expressed needs and installed it in about eleven weeks with a crew of eleven or twelve Buschman workers. It was constructed from several conveyor "standards" that were installed to fit within the building's existing footprint. The system is hardwired into the building, is three stories high, and originally contained about 6,155 feet of conveyor. It is attached to the floor by anchors set in concrete and bolts, and further attached to the building by a variety of bolts, angle bracing, stabilizing legs, floor-support columns, and ceiling hangers. The conveyor system is not welded to the building or embedded in the floor. The purchase price of the system was approximately $776,852.

ASP began using the conveyor system in January 1986 and later sold the building to Albertsons. Albertsons has removed or replaced portions of the conveyor system, but not the section at issue. The conveyor system is taxed to Albertsons as business personal property, not real property, under Oklahoma's ad valorem tax structure.

Finding no genuinely disputed issues of material fact, the district court concluded that the conveyer system is an improvement to real property within the meaning of § 109. The court considered the ad valorem tax status but concluded that under *Smith v. Westinghouse Electric Corp.*, 732 P.2d 466 (Okla. 1987), the fact that the conveyor is taxed as personal property rather than real property was

-4-

not dispositive because, unlike in *Smith*, it was taxed to the same entity that owned the real property where the injury occurred. The court then applied a three-pronged analysis discussed in *Smith*, which was formulated by the Georgia Supreme Court in *Mullis v. Southern Company Services, Inc.*, 296 S.E.2d 579, 583 (Ga. 1982):

> (1) is the improvement permanent in nature; (2) does it add to the value of the realty, for the purposes for which it was intended to be used; [and] (3) was it intended by the contracting parties that the "improvement" in question be an improvement to real property or did they intend for it to remain personalty.

As to the first factor of the *Mullis* test, the district court concluded that the conveyor is permanent in nature based on its size; the means and necessity of attachment to the building; the fact that it was configured specifically for the building's footprint and to fulfill the building's needs; and the amount of labor and time it took to install. Regarding the second factor, the court concluded that the conveyor system adds to the value of the building because it enhances the operation of the distribution center by moving materials around. In this sense, the court said, the conveyor was akin to an elevator, which the court deemed a clear example of an improvement to real property. And as to the third *Mullis* factor, whether the installation was intended by the parties (here, ASP and Buschman) to be permanent, the court relied on the reference to permanence in the above-quoted definition of "Equipment" in the sales agreement and the fact that ASP included the conveyor system when it sold the distribution center to Albertsons.

In the alternative, the district court concluded that the conveyor system also met the definition of a fixture under Okla. Stat. Ann. tit. 60, § 7, which provides:

> A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs, or embedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws.

Based on its statutory status as a "fixture," the court concluded that the conveyor system is an improvement under the "'common law fixture' test applied" in *O'Dell v. Lamb-Grays Harbor Co.*, 911 F. Supp. 490, 494 (W.D. Okla. 1995). Aplt. App. at 13.

## II

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

Applying these standards, and having reviewed the district court's opinion and order, the parties' arguments, and the relevant law, we affirm the district

court's decision for substantially the same reasons stated by the district court. In doing so, we reject plaintiffs' suggestion that there are genuine issues of material fact that preclude resolution on summary judgment. The only specific fact they allege to be disputed is whether ASP and Buschman intended the conveyor system to be permanent. In support of this argument, plaintiffs rely on identical statements in the affidavits of two Albertsons employees that the system "is not intended to be permanent." App. at 93, 95. Although these employees worked at the distribution center when the conveyor system was installed and continue to do so, nothing in their affidavits suggests that either one has any personal knowledge of what the parties intended with regard to permanence. *See* Fed. R. Civ. P. 56(e) (requiring affidavits to be made on personal knowledge). Instead, their opinion is based on their view that it would be "unrealistic to believe that a conveyor system, or other similar equipment, will remain operable and useful for the same duration as real estate or the physical structure." App. at 93, 95. Accordingly, their testimony is inadmissible on the matter of intent, and plaintiffs have not established a genuine issue of material fact that precludes summary judgment.

We also reject plaintiffs' other arguments. The district court did not wholly disregard the fact that the conveyor system is taxed as personal property. We agree with the distinction the district court drew between this case and *Smith*, where the alleged improvement, an electrical transformer, was taxed as personal property but to the public utility that owned it, not to the owner of the real

-7-

property on which it was placed and where the injury occurred. While we recognize that an item's ad valorem tax treatment is weighed more heavily than other factors under § 109, it is not dispositive. *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1255-56 (10th Cir. 2005) (applying Oklahoma law). Because the conveyor system here is taxed to Albertsons, the owner of the real property, the fact that it is taxed as personal property rather than as real property does not preclude a finding under the *Mullis* test that the system is an improvement to real property under § 109. *See O'Dell*, 911 F. Supp. at 493 (considering similar tax status and concluding that reliance on only that status to determine whether an item is an improvement to real property would lead to an absurd result under *Smith*). The district court considered the tax status and then moved on to consider the *Mullis* factors, which is the proper procedure under Oklahoma law. *See Durham*, 404 F.3d at 1253 (stating that the Oklahoma Supreme Court "would look to the machinery's ad valorem tax status, whether the machinery was taxed as the personal property of somebody other than the owner of the real property where the accident occurred, and the factors identified in *Mullis*"). Thus, we also reject plaintiffs' argument that *Mullis* is not the law of Oklahoma.

Plaintiffs further contend that this case is factually similar to *Durham*, where we held that production-line machinery was not an improvement to real property because of its tax status (taxed as personal property to the owner of the

-8-

real property) as well as its failure to fulfill any of the *Mullis* factors. *See id.*, 404 F.3d at 1256. Plaintiffs emphasize that like the machinery in *Durham*, the conveyor system is not integral to the building. We disagree. The relevant focus is whether the system "add[s] to the value of the realty, for the purposes for which it was intended to be used," *Mullis*, 296 S.E.2d at 583. This analysis must not be made in a vacuum, that is, detached from consideration of the purpose to which the realty is put to use when the improvement is made. Here, ASP intended to use the building as a grocery-distribution center and had the conveyor system installed for that purpose. Thus, we place no significance on the fact that the system theoretically could be removed if it no longer met the needs of the building's user; doing so would mean that the answer to the § 109 question would be dependent on speculation, which we do not think is appropriate under *Mullis*. Our discussion in *Durham* of the removability of the machinery at issue there is not to the contrary, as the conveyor system here has more indicia of permanence than the production-line machinery in *Durham*, which was specific to a type of manufacturing and not attached to the walls or roof.

Finally, plaintiffs take issue with the district court's "common law fixture" analysis. As this was an alternate basis for the court's disposition, we need not address plaintiffs' arguments pertaining to it.[4]

_____

[4] We also see no occasion to decide a question expressly left open in *Smith*, and apparently still unresolved under Oklahoma law: whether an item must meet

(continued...)

## III

The judgment of the district court is AFFIRMED.

Entered for the Court


Michael W. McConnell
Circuit Judge

---

[4](...continued)
any statutory definitions of real property in order to be considered an
improvement to real property under § 109.  *See Smith*, 732 P.2d at 469 n.12.